IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:24-cr-00223-AMN |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **GOVERNMENT'S SENTENCING** |
| **BRANDON BARTLEY,** | ) | **MEMORANDUM** |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby requests that the Court sentence the defendant Brandon Bartley according to the Sentencing Guidelines, to include a Guideline term of imprisonment of 200 to 210 months (140 to 150 months on Counts 1 and 2, followed by 60 months on Count 3), followed by at least 5 years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing factors in 18 U.S.C. § 3553(a).

I.   **INTRODUCTION AND FACTUAL BACKGROUND**

On May 24, 2024, the defendant pled guilty to Counts 1 to 3 of the information charging Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, Possession with Intent to Distribute a Controlled Substance, and Possession of a Firearm In Furtherance of a Drug Trafficking Crime. Dkt. 24 (Information); Dkt. 26 (Plea).

The United States adopts, and does not have any current objections to, the initial disclosure of Presentence Investigation Report ("PSIR"), dated August 15, 2024, prepared by the U.S. Probation Office, which in turn relied upon law enforcement reports and related discovery provided by the United States. *See* Dkt. 28.

In pleading guilty, the defendant admitted that he conspired to sell counterfeit oxycodone

pills containing fentanyl, as well as cocaine and methamphetamine. PSIR ¶ 5. As part of the investigation, a confidential source conducted several purchases from the defendant's co-conspirator, Jabree Jones, which included a controlled purchase on April 19, 2023, involving the defendant at his apartment on Western Avenue in Albany, New York ("Western Avenue Premises"). PSIR ¶¶ 5, 17.

On May 23, 2023, law enforcement executed a search warrant at the Western Avenue Premises, where they found the defendant alone, along with safe in the living room containing approximately 403 grams of fentanyl pills, approximately 7,237 grams of pills containing methamphetamine, and approximately 737 grams of cocaine. PSIR ¶ 29. They also found a digital scale and assorted other pills in the kitchen, and other bedrooms. *Id*. Law enforcement also found 34 firearms in the Western Avenue Premises, including 29 firearms in the safe with the drugs, as well as other firearms in the living room, in the rear bedroom, and also a loaded Glock handgun on Bartley's bed. PSIR ¶¶ 29-30. One of the firearms, a Glock Model 22 .40 pistol, was equipped with a machinegun conversion device that converted the firearm into a machinegun. PSIR ¶ 29. Many of the firearms were stolen. PSIR ¶ 31.

Photos found on the defendant's phones, which were also seized during the search, showed images of the defendant possessing firearms and images of the defendant with large amounts of cash, and text messages coordinating drug deals. PSIR ¶ 34.

The search of the defendant's phone also revealed evidence of fraud, including the defendant's fraudulent submission of applications for pandemic-related relief in three different states including New York, California, and Virginia, with an anticipated loss of at least $21,000. PSIR ¶¶ 54, 57.

The safe found at the Western Avenue Premises and its contents are seen below:




The defendant has been detained since his arrest on May 23, 2023. PSIR ¶ 8.

## II.     GUIDELINES PROVISIONS

### i. Criminal History Category

The United States agrees with Probation that Bartley has a total criminal history score of zero, which establishes a criminal history category of I. PSIR ¶ 65.

### ii. Offense Level Computation

As an initial matter, Count 3 cannot be grouped with Counts 1 and 2 because Count 3 requires that a specific 60-month term of imprisonment be imposed to run consecutively to any other term of imprisonment. Because Count 3 requires the imposition of a consecutive mandatory

3

minimum 60-month sentence, the specific offense characteristic for possession of a firearm is not applicable to the Guidelines relating to Counts 2 and 3, and no sentencing enhancements or additional penalties result from the conviction for possession of a firearm in furtherance of a drug trafficking crime. PSIR ¶ 35.

As to Counts 1 and 2 related to the defendant's drug trafficking offenses, Probation has properly calculated the total offense level to be 33. PSIR ¶¶ 39-52. The base offense level of 34 is based on the drug quantities involved—namely, that the defendant was personally involved with between 10,000 to 30,000 kilograms of converted drug weight, which accounts for the fentanyl, methamphetamine, and cocaine possessed. PSIR ¶ 40. As noted above, Probation has also properly not applied an enhancement for possessing a dangerous weapon because the conduct charged in Count 3 accounts for any weapon enhancement. PSIR ¶ 41.

The sentencing enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance (the "Premises Enhancement"), which results in an additional two-level upward adjustment under U.S.S.G. § 2D1.1(12), is also properly applied based on the fact that a large quantity of drugs and drug paraphernalia were found at the Western Avenue Premises and the demonstrated history of prior drug purchases there. *See, e.g.*, *United States v. Sampel*, 860 F. App'x 789, 792 (2d Cir. 2021) (applying enhancement when search of home resulted in discovery of digital scale and other drug paraphernalia and large amounts of cash, and at least two meetings were conducted at the home related to drug business); *United States v. Robtoy*, 848 F. App'x 53, 54–55 (2d Cir. 2021) (no clear error applying enhancement based on evidence of the presence of a co-defendant, a large quantity of drugs, and the history of prior purchases from that location).

4

The government would oppose any downward adjustment on the basis that the defendant was a "minimal participant" or "minor participant" in the criminal activity, as defined in U.S.S.G. § 3B1.2. A reduction of being a "minimal participant," or even a "minor participant," is based on the totality of the circumstances, and considers the degree of the defendant's knowledge of the scope and structure of the criminal activity, the degree of his participation, the degree of his decision-making authority, the nature and extent of his participation, and the degree to which he stood to benefit. U.S.S.G. § 3B1.2, App. Note 3. While "minimal participants" and "minor participants" are less culpable than most other participants in the criminal activity, U.S.S.G. § 3B1.2, App. Notes 4-5, "being comparatively less culpable than the other defendants and obtaining minimal participant status are not necessarily synonymous." *United States v. Caruth*, 930 F.2d 811, 815 (10th Cir. 1991); *see United States v. Solis*, 18 F.4th 395, 402 (2d Cir. 2021) ("Even assuming defendants played a lesser role than others who planned, organized, and financed the narcotics activity, the district court did not abuse its discretion in concluding that defendants were not minor participants and declining to grant them the reduction."). Individuals who actively participate in a drug conspiracy are typically not entitled to a reduction. *See United States v. Solis*, 18 F.4th 395, 402 (2d Cir. 2021) (no reduction where defendants knew they were responsible for transporting significant amounts of narcotics and understood the scope of conspiracy); *United States v. Villasenor*, 977 F.2d 331, 336 (7th Cir. 1992) (defendant not entitled to reduction where he was involved in multiple transactions and actively participated in the conspiracy).

Here, Bartley was involved in at least one controlled purchase involving a confidential source, and based on surveillance activity, was involved in many more. PSIR ¶¶ 17, 19. Bartley was also found with various types of substances and multiple firearms in the residence, including many that were in plain view. PSIR ¶¶ 29-30. Moreover, the defendant even admitted in his post-

*Miranda* interview with law enforcement that he understood the scope of the activities of the conspiracy. PSIR ¶ 33. The fact that his co-defendants Anthony Luizzi and Jabree Jones may have greater relative culpability and control over the entire drug conspiracy and operation, and comparatively more significant role in the scheme, does not necessarily mean that Bartley is a "minimal participant" in the scheme. Accordingly, the defendant cannot meet his burden and no reduction under 3B1.2 should be applied.

The United States agrees with Probation that the defendant is entitled to a two-level downward adjustment of the offense level for acceptance of responsibility pursuant to USSG § 3E1.1(a). PSIR ¶ 31. The United States also hereby moves for an additional one-level downward adjustment pursuant to USSG § 3E1.1(b) to credit the defendant for timely notifying authorities of his intention to enter a plea of guilty. PSIR ¶ 32. After application of all the adjustments noted above, the total offense level for Counts 1 and 2 should be 33.

### b. Guidelines Calculations

*Imprisonment.* The United States calculates the Guideline terms of imprisonment as follows: First, as to Counts 1 and 2, based upon a total offense level of 33 and a criminal history category of I, the Guideline imprisonment range is 135 to 168 months. Second, there are no Guideline calculations applicable to Count 3, which requires a 60-month consecutive sentence. U.S.S.G. § 2K2.4. The aggregate Guideline imprisonment range for all counts would therefore be 195 to 228 months.

*Supervised Release.* The Guidelines recommend a term of supervised release of at least 5 years for Counts 1 and 2 and not more than 5 years for Count 3. *See* U.S.S.G. § 5D1.2.

*Fines.* Based upon a total offense level of 29, the Guideline fine range would be $40,000 to $10,000,000. U.S.S.G. §5E1.2(c)(3)-(4).

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

The United States requests that the Court sentence the defendant according to the Sentencing Guidelines, including (1) a Guideline imprisonment term of 140 to 150 months on Counts 1 and 2, followed by a 60-month term of imprisonment to run consecutively on Count 3, for a total term of imprisonment of 200 to 210 months; (2) a supervised release term of 5 years for all counts, to run concurrently; and (3) a special assessment of $300 for all counts.

Having failed to submit the necessary certified personal financial statement or execute a release for a credit check, the defendant has not demonstrated an inability to pay a fine. PSIR ¶ 82. Assuming the defendant does not remedy these failures and demonstrate an inability to pay a fine, the government requests that the Court also impose a low-end Guideline fine of $40,000.

#### A. The Nature, Circumstances, and Seriousness of the Offense

The requested sentence should be imposed to reflect the nature and seriousness of the defendant's drug trafficking crimes involving significant quantities of cocaine, methamphetamine, and fentanyl, and his possession of multiple firearms.

As detailed in the PSIR, the offense involved the defendant's possession with intent to distribute a significant amount, and multiple types, of controlled substances. PSIR ¶¶ 5(c), 29. The significant penalties for fentanyl, methamphetamine, and cocaine trafficking, such as the 10-year mandatory minimum for possessing with intent to distribute mixtures or substances containing more than 400 grams of fentanyl and more than 500 grams of methamphetamine, and the 5-year mandatory minimum for possessing with intent to distribute 500 grams or more of cocaine, reflects the legislative priority that fentanyl, methamphetamine, and cocaine have taken in drug enforcement efforts in the United States. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B). In fact, of the 18,939 drug trafficking cases reported to the U.S. Sentencing Commission in the Fiscal Year

2023, 16.3% involved fentanyl and 47.5% involved methamphetamine; since 2019, fentanyl offenses have increased by 244.7%, and methamphetamine offenses have increased by 6.6%, which reflects the nationwide epidemic in fentanyl and methamphetamine trafficking crimes, including overdoses and deaths in recent years.[1] The DEA reported in January 2024 not only that fentanyl "remains the primary driver behind the ongoing epidemic of overdose deaths in the United States" but also that fentanyl is "increasingly being mixed with other illicit drugs, such as methamphetamine, heroin, and cocaine."[2] Those dangers are all the more present here, given that the defendant and his co-conspirators possessed and distributed fentanyl, methamphetamine, *and* cocaine. Drug trafficking and use continues to increase and destroy our communities, both through its threat to public health through addiction as well as through the violence that is connected to drug trafficking. *See Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring) (noting that the portrayal of a drug trafficking offense as "nonviolent and victimless…is false to the point of absurdity").

The seriousness of the defendant's conduct is also highlighted by his possession of firearms, including the possession of a loaded firearm on his bed in furtherance of drug trafficking, as well as the cache of 33 other firearms spread around his apartment, including loaded, stolen firearms, and including one firearm that have been outfitted with a conversion device to allow it to function as a machinegun.[3] PSIR ¶ 29. It may seem obvious but the "damage a machinegun can inflict is enormous." *United States v. Hixson*, 624 F. Supp. 3d 930, 940 (N.D. Ill. 2022) ("The

---

[1] U.S. Sentencing Comm., *Quick Facts, Fentanyl Trafficking,* https://www.ussc.gov/research/quick-facts/fentanyl-trafficking (last visited Aug. 29, 2024); U.S. Sentencing Comm., *Quick Facts, Methamphetamine Trafficking*, https://www.ussc.gov/research/quick-facts/methamphetamine-trafficking(last visited Aug. 29, 2024).
[2] DEA STREET, https://www.dea.gov/sites/default/files/2024-01/Street%20Report%20-%20Jan%202024%20-%20FINAL.pdf (last visited Aug. 26, 2024).
[3] Indeed, possession of a machinegun in furtherance of drug trafficking crimes carries a 30-year mandatory minimum sentence that would run consecutively. 18 U.S.C. § 924(c)(1)(B)(ii).

dangerousness manifests itself not only in the sheer number of bullets that can be emptied from the magazine in the blink of an eye but also in the resulting lack of control of the firearm when discharging it"). Public videos illustrate the comparative dangers of firing a regular pistol with one equipped with a conversion device that allows it to function as a machinegun. *See, e.g.,* AL.com, *Glock switch demonstration*, YouTube (Dec. 15, 2023), https://youtu.be/e6WENx_42WQ?si=JieMDNbsAPKFbqs5. Bartley likely also owned, possessed, and used other uncharged firearms as well. *See* PSIR ¶ 34.

The defendant should be sentenced based on his serious offense conduct, which significantly impacted gun violence and drug addiction in our community.

### B. The History and Characteristics of the Defendant

The defendant is a first-time offender, which should be considered. But his uncharged fraudulent conduct suggests that his criminal history category may under-represent the seriousness of his criminal past and the likelihood that he may commit future crimes. *See* PSIR ¶ 34. Indeed, he appears to have submitted fraudulent unemployment insurance claims in three different states in 2020 and 2021, causing more than $21,000 in losses in California. *Id.* Indeed, his father Daryl was also imprisoned for fraud too,[4] so he may not have the appropriate support system in place to significantly avoid future criminal conduct and recidivism.

The defendant also has a history of using marijuana, and multiple other substances, including opiates, alcohol, cocaine, and ecstasy. PSIR ¶ 74. He reported having used marijuana multiple times daily prior to his arrest and reported an addiction to Xanax. *Id.* He admitted that his mental health issues also make him "impulsive." PSIR ¶ 73. His history of substance abuse and

---

[4] *See United States v. Daryl Bartley*, 1:20-cr-003-KPF (S.D.N.Y. Nov. 8, 2021), ECF No. 274 (judgment for conspiracy to commit bank and wire fraud); Press Release, U.S. Att'y Off. S.D.N.Y. , *15 Defendants Charged In Manhattan Federal Court For $18 Million Fraud Scheme*, https://www.justice.gov/usao-sdny/pr/15-defendants-charged-manhattan-federal-court-18-million-fraud-scheme; *see also* PSIR ¶ 69.

mental health issues could lead to irrational and impulsive decision-making, and contribute to his recidivism risk, and merits special conditions for any term supervision imposed. *See* PSIR at 23.

### C. Respect for the Law, Just Punishment, and Deterrence

A Guideline term of imprisonment will also promote respect for the law, provide just punishment, and further both specific deterrence to the defendant and general deterrence to others. 18 U.S.C. § 3553(a)(2). The requested sentence will serve as a general deterrent to those who unlawfully possess firearms as well as those who traffic in fentanyl, cocaine, and methamphetamine that are deadly and poison our communities. It will also serve as a specific deterrent to protect the public from the future crimes the defendant could commit, whether for drug, firearms, or fraud-related crimes.

A guideline prison sentence also reflects the appropriate sentencing range established by the Sentencing Guidelines and avoids unwarranted sentencing disparities among defendants. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-Guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Those guidelines have been used and deemed reasonable by other federal courts, including in the Northern District of New York, in sentencing other defendants for similar drug trafficking and firearms offenses. *See, e.g.*, *United States v. Cintron*, 5:23-cr-00213-GTS, ECF No. 45 (Nov. 6, 2023) (sentencing defendant to a guideline range of 151 months for drug trafficking offense

involving fentanyl and possession of a firearm); *United States v. Gulley*, 5:21-cr-00269-GTS, ECF No. 44 (Nov. 28, 2023) (sentencing defendant to guideline term of 240 months for drug trafficking offense involving fentanyl and possession of multiple firearms in furtherance of drug trafficking). Accordingly, this Court should avoid any sentencing disparities and should sentence Bartley according to the Guidelines.

## IV.   CONCLUSION

Given the nature and characteristics of this offense involving the possession of significant quantities of fentanyl, cocaine, and methamphetamine, and possession of more than 30 firearms, including a machinegun, in furtherance of his drug trafficking crimes, the United States recommends that the Court impose a sentence that includes a total term of imprisonment of 200 to 210 months followed by 5 years of supervised release.

## V.   RESERVATION OF RIGHTS

The United States reserves the right to respond to defense arguments raised for the first time after filing this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the Sentencing Guidelines for grounds not identified by the parties or in the PSIR, the government requests notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States also requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, except for the confidential sentencing recommendations submitted by the United States Probation Office.

Dated: August 29, 2024                                Respectfully submitted,

                                                CARLA B. FREEDMAN
                                                United States Attorney

                                  By:    */s/ Alexander P. Wentworth-Ping*
                                                Alexander P. Wentworth-Ping
                                                Assistant United States Attorney
                                                Bar Roll No. 701897